UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSHUA J. FAIRLEY,                    )
                                      )
            Petitioner,               )
                                      )
      v.                              )       No. 2:18-cv-00173-WTL-MJD
                                      )
RICHARD BROWN, Warden of the Wabash   )
Valley Correctional Facility,         )
                                      )
            Respondent.               )

**Order Denying Petition for a Writ of Habeas Corpus
and Denying a Certificate of Appealability**

Joshua J. Fairley, an inmate incarcerated in the Indiana Department of Correction, seeks a writ of habeas corpus by challenging his conviction from the Vanderburgh Circuit Court in Evansville, Indiana, case number 82C01-1008-MR-936. Respondent filed a return and also filed the state court transcripts and exhibits. Mr. Fairley did not file a reply. For the reasons explained in this Order, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**. The Court also determines that a Certificate of Appealability should not issue.

**I. Procedural History**

On August 4, 2010, Mr. Fairley was charged with the murder of sixteen-year-old H.G. in Vanderburgh County, Indiana. Public defender Dennis Vowels was appointed to represent him.

Mr. Vowels negotiated a plea agreement with the State, and Mr. Fairley pled guilty to the murder charge. The trial court ordered a pre-sentence investigation. On March 17, 2011, Mr. Fairley was sentenced to fifty years incarceration. There was no direct appeal.

On February 23, 2012, Mr. Fairley filed a pro se petition for post-conviction relief in the trial court. The Indiana State Public Defender entered an appearance for Mr. Fairley and filed an

amended petition on April 29, 2016. An evidentiary hearing was held April 29, 2016. Mr. Vowels, Detective Spencer, Detective Sides, and Dr. Fred Unverzagt testified. The deposition of Dave Frank, Mr. Fairley's former employer, and the tape recording of Mr. Fairley's August 2, 2010 statement to police were admitted as evidence. On February 21, 2017, the trial court denied Mr. Fairley's petition. Dkt. 2-1, pp. 1-26 (findings of fact and conclusions of law).

Still represented by the State Public Defender, Mr. Fairley appealed to the Indiana Court of Appeals. Mr. Fairley argued that (1) he had received ineffective assistance of trial counsel because (a) counsel failed to investigate Mr. Fairley's competency to plead guilty, and (b) trial counsel failed to file a motion to suppress the statement given to police; (2) his guilty plea was not knowingly and voluntarily made and there was an insufficient factual basis for the plea; and (3) he was denied due process of law when the trial court accepted his plea without first *sua sponte* investigating whether he was competent to stand trial.

On December 29, 2017, the Court of Appeals held that the trial court did not clearly err in concluding that Mr. Vowels provided effective assistance of counsel, the trial court did not clearly err in denying the claim that Mr. Fairley's plea was not knowingly and voluntarily entered, and the trial court did not clearly err in failing to *sua sponte* investigate Mr. Fairley's competence. Dkt. 9-7.

Mr. Fairley petitioned the Indiana Supreme Court to accept transfer of the case, presenting each of the claims presented to the Court of Appeals. On March 22, 2018, transfer was denied. On April 10, 2018, Mr. Fairley, proceeding *pro se*, filed his petition for a writ of habeas corpus. Dkt. 1.

## II. Habeas Corpus Legal Standard

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply

reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting Richter, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III. Facts of the State Case

Federal district court review of a habeas corpus petition presumes all factual findings of the state courts to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The facts of Mr. Fairley's case, as taken from the Indiana Court of Appeals' decision on post-conviction appeal, are these:

> On the night of June 23, 2010, Fairley was at his home in Evansville with Summer Jones. . . . Jones had previously been in a relationship with Fairley, and the two were in bed. At some point late that night or early the next morning, someone began to pound on the door and walls of Fairley's home. Jones figured that the person causing the commotion was Fairley's ex-girlfriend, as Fairley had told Jones that he had recently broken up with his girlfriend, and she was correct.

4

Jones heard the sound of glass break and heard Fairley tell the ex-girlfriend, later identified as sixteen-year-old H.G., to leave. H.G. told the then thirty-year-old Fairley that she wanted to resume their relationship, but Fairley told her that their relationship was over because H.G. had indicated that she desired to have sex with another man. As Jones dressed and readied to leave the house, she saw H.G. attempt to enter the home through a window while Fairley was preventing her from doing so. Upon seeing Jones, H.G. stated, "Who you got in here? A sixteen year old? Is it a sixteen year old?" H.G. eventually entered the house, apparently through the door, and wanted to physically fight Jones. H.G. entered the kitchen where Jones was and lunged at her, but was restrained by Fairley, who told Jones to leave through the front door. Jones did not see H.G. with any weapons, but knew that her ire was directed toward Jones.

Jones left Fairley's home and walked to her father's house nearby, forgetting that her own vehicle was parked outside Fairley's home. She later woke her father up and asked him to drive her back to Fairley's home so that she could get her vehicle; she also wanted her father to be there in case H.G. was still at Fairley's house and tried to fight her. When Jones returned to her vehicle, she noticed that the passenger side window had been broken. Jones called the police to report the broken window, and an officer arrived and took a statement from her. The officer then went to Fairley's front porch and knocked on the door, but no one answered. The officer found a purse and wallet on the front porch, and found two pieces of identification. He showed them to Jones, who identified one of the pieces of identification as belonging to the girl she had seen enter Fairley's home, H.G. Jones then left to get her vehicle repaired.

Later that day, June 24, Fairley failed to show up to work at a local pizzeria. The owner of the establishment telephoned Fairley but got no answer. He then sent another employee to check on Fairley. This employee called back at around 5:00 p.m. and informed his boss that the front door was broken, a window was broken, and that he could see blood on the floor and a girl lying on the floor. The police were called to the scene and discovered H.G. lying dead on the floor with a gunshot wound to her head. They found Fairley in the bathroom, sitting on the toilet with what appeared to be a self-inflicted gunshot wound to the head. The bullet had entered under his chin and exited the top of his head. Miraculously, Fairley was still alive. Fairley was transported to a local hospital then taken to Wishard Hospital in Indianapolis.

. . . .

Detective Jack Spencer . . . of the Evansville Police Department was lead investigator on the case. He, along with crime scene investigators, spent many hours going over the scene of the crime. They also learned that Jones had reported vandalism to her vehicle outside Fairley's house the morning of the day H.G. was found dead. The police transported Jones from her home across the Ohio River in Owensboro, Kentucky and interviewed her. Jones told them of the events of the night as recounted above.

During the investigation, the police found no evidence indicating the involvement of a third party in the shootings. Forensic evidence also ruled out the possibility of an accidental shooting, as H.G.'s body had no indication that she had

held the gun. Instead, the police believed that Fairley and H.G. had gotten into an argument, that Fairley had shot H.G. in the head, and then shot himself.

On July 13, 2010, Detective Spencer and Detective Michael Sides . . . drove to Wishard Hospital to talk to Fairley. Although the police did not read Fairley his Miranda rights, Fairley was not communicative. Detective Spencer told Fairley that he would be charged with murder but did not arrest Fairley at the time.

That Fairley was non-communicative was not a surprise, as he had suffered a severe head wound and a brain injury. Fairley had to undergo several surgeries and medical procedures, including a frontal lobectomy, the removal of his left eye, and repair to his skull and jaw. Fairley was also sedated for a long period. But he began to receive physical and speech therapy in July 2010 and began to stabilize. Reports from mid-July indicate that Fairley suffered from somnolence. And a clinical specialist diagnosed Fairley in mid-July with dementia, disorientation as to place, and an inability to recall the names of family members and identify objects in the room. Later that month, Fairley was given a mental acuity test in which 30 is a perfect score; Fairley scored only 12. Fairley had difficulty following instructions and could not recall some of his own personal information, e.g., he could recall his date of birth, but not his age.

Indianapolis police contacted Detective Spencer in late July and informed him that the hospital was preparing to release Fairley. Detective Spencer spoke with one of Fairley's nurses, who informed him that Fairley had progressed mentally and physically but still suffered from problems with his memory. On August 2, 2010, Detectives Spencer and Sides drove to Indianapolis to take Fairley into custody and return him to Evansville. At the hospital, Detective Spencer asked Fairley where he was, what the date was, what was his date of birth, and who was the President of the United States. Fairley answered the questions about his whereabouts correctly. Although he could not remember the name of the current President, he did recall that he was African-American. When Detective Spencer asked Fairley if he knew why he was in the hospital, he replied that he did not. But Fairley then pointed to the wound on his chin and asked when it had occurred. Detective Spencer replied that he had hoped that Fairley could tell him about the gunshot wound. Detective Spencer also asked Fairley if he knew where H.G. was. Fairley responded that he thought she was in Evansville, but knew that he had not heard from her while in the hospital.

Detective Spencer's questioning of Fairley was summarized in his police report as follows:

> I asked Fairley if he remembered the night [H.G.] came to his house while Summer Jones was there and he stated he did. Fairley stated that he and Summer were about to have sex when [H.G.] came over. Fairley stated he remembered that [H.G.] broke the window and eventually came in through the front door. Fairley told me that [H.G.] had a key to his house. Fairley stated that he told Summer to leave out the back door and also told [H.G.] to leave. Fairley stated that [H.G.] was angry because Summer was there and he thought she was going to beat up Summer. Fairley stated he held [H.G.] down on the floor so Summer could leave. Fairley stated he

did not know what door she left out of. Fairley stated he could not remember anything after that. I told Fairley that [H.G.] had been shot and was dead. Fairley looked at me puzzled and told me that he had just seen her recently. I told Fairley that we believed based on evidence at the scene that he had shot [H.G.] and then shot himself and I needed to know why. Fairley stated he could not remember and never stated he did not shoot [H.G.] or himself.

Fairley was discharged and Det. Sides and I handcuffed Fairley and explained that he was under arrest for [H.G.]'s murder, and he was going back to Evansville with us. He stated he understood, but asked no questions of me. I asked no more questions of Fairley regarding the case until we left the hospital.

We stopped south of Terre Haute to get gas, and I took the opportunity to continue my questioning of Fairley. I retrieved two copies of the Miranda Waiver form and put one in his hand. I sat next to Fairley in the back seat and explained Miranda to him. He stated he understood what was said. I slowly read the form out loud and Fairley stated he understood his rights. He was unable to sign, due to the fact he was handcuffed to a leather belly belt, limiting his mobility.

I again went over the events of June 24, 2010 with Fairley, and it was digitally recorded. I showed a crime scene photo to Fairley of the front of the house and asked him if it looked familiar. He stated that it was his house. I showed another photo of a handgun lying on the carpet in a pool of blood. Fairley seemed taken back by the photo and stated that it was his gun. I asked Fairley about his relationship with [H.G.] and he stated he did not remember how they met, but they had been in a sexual relationship for at least a year. Fairley stated that Jeff Phillips and [H.G.]'s aunt Angie knew of the relationship and [H.G.] would come to his house often while she was supposed to be staying at Angie's house. Fairley stated he thought [H.G.] was nineteen years old. I asked Fairley if anyone else was with [H.G.] when she came to his house that night Summer was there. He stated [H.G.] was alone, and he and Summer were alone until [H.G.] arrived. I asked Fairley if he saw [H.G.] with any weapon and he stated no. I asked Fairley if he had a sword collection and he stated he did. I asked him if he ever saw [H.G.] with one of his swords that night and he stated he did not remember her with one.

I asked Fairley about his gun and what type it was. He stated he believed it was a 9mm and he had bought it from Tony Mattingly some time ago. I asked him low long ago and he stated it probably was longer than one year. I asked Fairley where he kept his gun, and he stated that it was kept in a locked closet in his bedroom and he had the only key, which was kept on his keyring. Fairley stated he kept a loaded magazine in the gun, but not one in the chamber. I

> asked Fairley if [H.G.] knew he had a gun and he stated she did, but did not have access to it.
>
> Detective Spencer later stated that, during this interview, Fairley had provided him with little information that he did not already know. On August 4, 2010, the State charged Fairley with murder.
>
> In jail, Fairley's recovery continued. On August 5, 2010, he asked a jail officer if he could "go sweep," which he did not understand. Eventually, he understood that Fairley meant that he wanted to shower. Approximately one week later, a clinical social worker evaluated Fairley as part of the suicide watch procedure and noted that he was oriented as to the time and date. Fairley told the social worker that he did not recall shooting himself or H.G.

Dkt. 9-7, ¶¶ 3-12 (Ind. Ct. App. memorandum opinion) (internal record citations and footnote omitted).

The Court of Appeals made other fact determinations, both as to the murder and to Mr. Fairley's trial court representation. Such facts will be discussed as necessary in the following sections of this Order.

## IV. Habeas Corpus Claims

Three grounds for relief are presented in Mr. Fairley's petition, which the Court summarizes:

Ground One: Guilty plea was not knowing, intelligent, or voluntary.

Ground Two: Ineffective assistance of trial counsel.

Ground Three: Trial court's failure to evaluate his competency and hold a hearing.

Each of these grounds, and their sub-components, are discussed below.

**A. Mr. Fairley's guilty plea was not knowingly, intelligently, or voluntarily given in violation of his right to due process, "due course of law," equal protection, and privileges guaranteed by the Fifth, Sixth, and Fourteenth Amendments.**

**(1) Mr. Fairley's argument**

Mr. Fairley argues that he sustained a traumatic brain injury during the crime and was later unable to accurately recall the events that resulted in his being charged with murder. He argues

that this raised an issue of competency. Mr. Fairley also argues that his statement to the police was taken in violation of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and was not challenged by his trial counsel, and had it been, the state's case would have been significantly weaker and he would not have pled guilty. Dkt. 2, p. 5.

### (2)     Respondent's argument

The respondent argues that Mr. Fairley did not present any federal constitutional claims to the Indiana courts concerning his guilty plea. Rather, he argues, Mr. Fairley challenged his guilty plea solely on state law grounds. Specifically, when Mr. Fairley argued that his guilty plea should not have been accepted because he had professed his innocence in a subsequent pre-sentence report, he cited only to state law and did not invoke federal constitutional law. Because Mr. Fairley did not fairly present his federal claim to the state courts, the respondent urges that this Court cannot reach the merits of Mr. Fairley's claim that his guilty plea was not knowingly, intelligently, and voluntarily made.

Alternatively, the respondent argues, if this Court reaches the merits of Mr. Fairley's claim, relief should be denied because the claim is not contrary to or an unreasonable application of *Boykin v. Alabama*, 395 U.S. 238 (1969) (discussing guilty pleas).

### (3)     Analysis

The respondent is correct that when Mr. Fairley presented this claim to the Indiana courts he did not title it as a federal constitutional claim or cite and argue controlling Supreme Court precedent. The claim cited to Indiana law and statutes. But that is not the end of a "fair presentment" analysis. A claim may be considered to have been fairly presented to the state courts when "the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right;" and when "the petitioner alleged a pattern of facts that is well within the

mainstream of constitutional litigation." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).[1]

Mr. Fairley's claim before the state courts had been framed in terms and a pattern of facts that immediately call to mind *Boykin v. Alabama* because he contended his plea was not made voluntarily and intelligently nor was there a sufficient factual basis for the plea. *See* dkt. 9-4 (appellant's brief during post-conviction appeal). The portion of the claim concerning whether the plea was knowingly, intelligently, and voluntarily made is what respondent addressed when he addressed the merits of this claim. Thus Mr. Fairley's claim calls to mind the constitutional rights involved. Therefore the Court will address the claim on its merits.

"[T]he Constitution prohibits a court from accepting a criminal[ ] defendant's guilty plea 'without an affirmative showing that it was intelligent and voluntary.'" *Dansberry v. Pfister*, 801 F.3d 863, 864 (7th Cir. 2015) (quoting *Boykin*, 395 U.S. at 242 (1969)). This requires the defendant to "be fully aware of the direct consequences of his plea, including the permissible range of sentences." *Id*. (citation and quotation marks omitted).

The Indiana Court of Appeals set out the relevant portion of Mr. Fairley's guilty plea proceeding:

> [Court]: You've been charged in this case with Murder a felony. You understand the nature of that charge?
> [Fairley]: Yes Sir, I do.
> [Court]: Pursuant to this plea agreement you now withdraw you[r] plea of not guilty and enter a plea of guilty as charged.
> [Fairley]: Yes.

---

[1] In *Anderson*, the Seventh Circuit held: "We will consider four factors when determining whether a petitioner has fairly presented his federal claim to the state courts: '1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.'" 471 F.3d at 815 (citing *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001); *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001), and *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001).

[Court]: You understand that by you[r] plea of guilty you are admitting the truth of all the facts [as] alleged in the charging information filed against you and upon entry of you[r] plea of guilty the Court will proceed with judgment and sentencing.

[Fairley]: Yes Sir.

[Court]: You understand the following rights, you are entitled to a speedy and public trial by court or jury the State must prove beyond a reasonable doubt that you committed the offense charged before you can be convicted of it. You have the right to introduce evidence and testify if you so desire. However, you cannot be compelled to testify against yourself. The court will subpoena any witnesses needed for your defense. You have the right to object to the introduction of the evidence and to confront and cross examine any witness used by the State. If the verdict is against you and you were found guilty you have the right to appeal. If you could not afford an attorney the court would appoint an attorney to represent you on that appeal. Do you understand these rights?

[Fairley]: Yes.

[Court]: You also understand Sir by pleading guilty you're giving up all these rights.

[Fairley]: Yes.

[Court]: Now [the] State says that in Vanderburgh County, Indiana on or . . . between June 23 and June 24 of 2010 you knowingly and intentionally killed another human being. That being, [H.G.]. Do you admit that Sir?

[Fairley]: Yes. Sir.

[Court]: [Is the] State satisfied with [the] factual basis?

[State]: Yes, Your Honor.

[Court]: Have you read this plea agreement, Mr. Fairley?

[Fairley]: Yes.

[Court]: Does it contain all the conditions reached between yourself and the State of Indiana?

[Fairley]: Yes.

[Court]: You understand that I am not a party to this agreement and that I've neither accepted it or rejected it at this time.

[Fairley]: Yes.

[Court]: You understand that if I don't accept the agreement you'll be . . . permitted to withdraw you[r] plea of guilty and re-enter [a plea] of not guilty and then these proceedings today will not be made a matter of record. And if I accept the agreement I'm bound by the terms of the agreement as well. Do you understand that?

[Fairley]: Yes Sir.

[Court]: Are you aware that the maximum sentence for the charge of Murder is sixty five (65) years, minimum of forty five (45) years with a possible fine up to ten thousand (10,000) dollars.

[Fairley]: Yes.

[Court]: If this crime [was] committed while you were on probation, parole or serving a prison term for another crime then the sentence for this crime cannot

begin until the other has ended. This is called consecutive sentences, do you understand that?

    [Fairley]: Yes Sir.

    [Court]: Has anyone made any promises[,] force or threats to obtain your plea of guilty?

    [Fairley]: No Sir.

    [Court]: Therefore is it a voluntary plea of guilty?

    [Fairley]: Yes.

    [Court]: Do you fully understand this proceeding Sir, and have you discussed it with you[r] attorney?

    [Fairley]: I did. Yes.

    [Court]: Are you presently under the influence of alcohol or drugs?

    [Fairley]: No.

    [Court]: You understand that before you're sentenced, you'll have the right to present evidence or testimony or have you're [sic] attorney speak on you[r] behalf?

    [Fairley]: I understand.

    [Court]: If you understand those rights Sir, please sign that form and file it with the court. Please let the record reflect he's been advised of his constitutional rights and he has filed the acknowledgment of those rights. The Court finds that a factual [basis] exists for his plea of guilty to Murder [a] Felony. Court further finds the defendants plea is made knowingly, voluntarily and intelligently. Court orders a pre-sentence investigation report to be prepared[.]

    [Vowels]: [O]ne of the things that wasn't asked [of] you, do you understand if you went to trial the way the evidence is in this case that I believe the Jury would get a verdict form and they could choose between finding you guilty of Murder or Manslaughter or Reckless Homicide. And those sentences are a lot less than this. It's less than fifty (50) years that you're agreeing to, and by pleading guilty you don't give a jury the opportunity to decide if you committed a lesser charge. You understand what I've said?

    [Fairley]: Yes Sir.

    [Vowels]: You, you wanna do this? You wanna plead guilty to Murder and take fifty (50) years if the Judge will give it to ya?

    [Fairley]: Yes, I do.

Dkt. 9-7, pp. 11-14.

On this plea colloquy, the trial court accepted Mr. Fairley's guilty plea and ordered a pre-sentence investigation. In the post-conviction appeal, the Indiana Court of Appeals applied Indiana law on guilty pleas as discussed in *Williams v. State*, 42 N.E.3d 107, 113 (Ind. Ct. App. 2015). It wrote that to accept a guilty plea, the trial court must ensure that a defendant (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively

waives several constitutional rights – including trial by jury, confrontation and cross-examination of witnesses, compulsory process, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentences for the crimes charged. Dkt. 9-7, pp. 24-25 (citing *Williams*, 42 N.E.3d at 113). These requirements are the same requirements set out in *Boykins*, holding that the record must be clear that a defendant pleading guilty knows that his plea waives these rights:

> First . . . the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second . . . is the right to trial by jury. Third . . . is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

*Boykins*, 395 U.S. at 243.

But Mr. Fairley does not *specifically* argue that the trial court failed to inform him that his plea waived his constitutional rights. Rather, he implicitly argues that because of his brain injury and his inability to remember the events of the shooting, his competency should have been investigated. The Indiana Court of Appeals disagreed.

> The trial court explained all of the rights Fairley would give up if he pleaded guilty. Despite these warnings, Fairley never indicated anything other than a desire to plead guilty at the plea hearing. To the contrary, he informed the trial court that he understood the nature of the charge against him, and that he admitted to the truth of the allegations contained in the charging information. Vowels even explained to Fairley on the record the possibility of him being convicted of a lesser-included offense if he proceeded to trial. Fairley indicated that he understood this but still desired to plead guilty. And Vowels testified at the post-conviction hearing that he observed nothing about Fairley's demeanor or behavior at the plea hearing that would have indicated that Fairley was incompetent to plead guilty. Simply put, the post-conviction court did not clearly err in concluding that Fairley had not met his burden of proof to show that he was incompetent to plead guilty.

Dkt. 9-7, pp. 25-26.

Focusing on the state court's decision and the record upon which it is based, this Court cannot say that the decision was contrary to, or involved an unreasonable application of, clearly

established federal law. Nor can the Court say that the decision was based on an unreasonable determination of the facts. *See Avila*, 751 F.3d at 535. The Indiana Court of Appeals application of state law also satisfied the *Boykin* requirements. Mr. Fairley was advised of the rights he was waiving and stated clearly that he understood his plea waived those rights, and nothing in this record shows otherwise. Nothing in the record suggests that the trial judge should have questioned Mr. Fairley's competency and had him evaluated before taking a plea.

Mr. Fairley's reference in this ground for relief of his *Miranda* rights does not change this outcome. A *Miranda* claim was not asserted as a free-standing claim at any point in the state post-conviction proceedings, and it is not a freestanding claim in this action. Additionally, Mr. Vowels testified at the post-conviction evidentiary hearing that Mr. Fairley's statement to police and the question of its admissibility played no part in the plea negotiations. Dkt. 9-7, ¶ 17. And, moreover, the statement was not used against him and there is no indication it was considered by the trial court.

This Court must give deference to the state court's decision. The decision that Mr. Fairley's plea was knowingly, intelligently, and voluntarily made, and that the trial court judge had no reason to question Mr. Fairley's competency is not contrary to, and is not an unreasonable application of, clearly defined federal law as set out in *Boykins*. It is not based on an unreasonable determination of the facts from the state court record.

Habeas corpus relief on Mr. Fairley's first ground for relief is **denied**.

**B.  Ineffective Assistance of Counsel**

**1.  Mr. Fairley's Argument**

Mr. Fairley argues that trial counsel was ineffective because (a) he failed to attempt to have the statement to police suppressed; and (b) he failed to hire an expert to investigate the impact of

Mr. Fairley's head injury on his ability to process information, recall what had happened, or his competency to plead guilty. Mr. Fairley does not allege in his petition that but for these failures he would have obtained a better result.

### 2. Respondent's Argument

The respondent argues that the Indiana Court of Appeals rejected Mr. Fairley's ineffective assistance of counsel claims on the merits, and therefore relief cannot be granted unless the Court of Appeals unreasonably applied clearly defined federal law, or the decision was based on an unreasonable determination of the facts. The respondent argues the state court's decision that Mr. Fairley was not ineffective was not an unreasonable decision.

### 3. Analysis

#### (a) Legal Standard

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a habeas corpus petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced him. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).

In guilty plea cases, the prejudice prong has a slightly different requirement:

[T]the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S.

258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, **he would not have pleaded guilty and would have insisted on going to trial**.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (emphasis added). Recently, in *Lee v. United States*, 137 S. Ct. 1958 (2017), the Court clarified the showing necessary in a guilty plea case to establish prejudice. It held that in cases where trial counsel was alleged to have erred in providing a defense to the charge (as opposed to a miscalculation of penal consequences), the petitioner must also show "he would have been **better off** going to trial." 137 S. Ct. at 1965 (emphasis added). But the Indiana Court of Appeals did not reach that issue because it found no deficient performance.

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Indiana Court of Appeals set out the legal standard it would follow in assessing Mr. Fairley's ineffective assistance of counsel claim:

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not

have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687–88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

*Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). Moreover,

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746–47 (Ind. 2002) (citations omitted).

Dkt. 9-7, ¶ 23. Indiana's ineffective assistance of counsel legal standard is essentially the *Strickland* standard.

Acknowledging that ineffective assistance claims in guilty plea cases have their own unique considerations, the Court of Appeals set out what a post-conviction relief petitioner has to show to obtain relief:

> We conclude that *Hill* [*v. Lockhart*, 474 U.S. 52 (1985)] . . . requires a showing of a reasonable probability of success at trial if the alleged error is one that would have affected a defense.

Dkt. 9-7, ¶25. This standard tracks *Lee* and *Hill*.

Finally, "[s]trategic decisions . . . so long as they are made after a thorough investigation of law and facts, are 'virtually unchallengeable'" in habeas corpus proceedings. *Blackmon v. Williams,* 823 F.3d 1088, 1103 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690).

**(b)    Discussion**

The Indiana Court of Appeals held that Mr. Vowels was not ineffective when he did not seek to suppress Mr. Fairley's statements to police based on Mr. Vowels's testimony about his

defense strategy. Dkt. 9-7, ¶ 32. It considered Mr. Vowel's testimony at the post-conviction evidentiary hearing that (1) Mr. Vowels is an experienced criminal defense attorney in Vanderburgh County; (2) his usual practice is to wait until shortly before trial to file a motion to suppress; (3) he was confident the statement would not be admitted; (4) he believed that the prosecutor also thought the statement was inadmissible; and (5) Mr. Vowels does not believe that the statement and the lack of a motion to suppress had any impact on the plea negotiations. *Id.* On these facts, the state court's decision was not an unreasonable application of the facts to *Strickland*'s performance prong.

The Indiana Court of Appeals next addressed the question of whether trial counsel was ineffective for not hiring an expert to assess Mr. Fairley's competency to plead guilty.

The Fourteenth Amendment's Due Process Clause "does not permit trial of an individual who lacks mental competency." *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (internal quotation marks omitted). A person is competent to stand trial when "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and . . . a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam). An inability to remember the crime is insufficient to create a reasonable cause for a competency hearing. *United States v. Antonelli*, 85 F. App'x 523 (7th Cir. 2004). The focus is on the defendant's mental state at the time of the plea. *Id.*

Under Indiana law "a defendant is not competent to stand trial when he is unable to understand the proceedings and assist in the preparation of his defense." *Mast v. State*, 914 N.E.2d 851, 856 (Ind. Ct. App. 2009). The Court of Appeals noted that when "a criminal defendant is thought to lack the ability to understand court proceedings and assist in his own defense," then

competency should be investigated. Dkt. 9-7, ¶ 28 (citing *Gross v. State*, 41 N.E.3d 1043, 1047 (Ind. Ct. App. 2015) (citing Ind. Code § 35-36-3-1(a)).

In assessing whether Mr. Vowels should have had reason to question Mr. Fairley's competency, the Court of Appeals looked to Mr. Vowels's testimony at the post-conviction evidentiary hearing. There, Mr. Vowels acknowledged that when he first met Mr. Fairley he was "non-communicative." However, Mr. Fairley made a rapid recovery and began to respond appropriately to Mr. Vowels's questions. Eventually Mr. Fairley recalled events leading up to the shooting, including Ms. Jones leaving his house and him having to restrain H.G. Mr. Vowels testified that Mr. Fairley was able to go over discovery materials with him, discuss potential defenses, and considered the evidence against him. Mr. Vowels testified that Mr. Fairley was able to assist him in preparing the defense. And, the court noted, "the fact that [Mr.] Fairley could not recall the moments around the shooting does not mean that he was incompetent to stand trial." Dkt. 9-7, ¶ 29.

The Court of Appeals did not end its assessment there. It also took into consideration the testimony of Dr. Unverzagt, a neuropsychologist retained by Mr. Fairley's post-conviction counsel. Dr. Unverzagt was unable to do a "retroactive competency evaluation" to evaluate whether Mr. Fairley was competent at the time he pleaded guilty. The doctor agreed that Mr. Fairley had made a remarkable recovery. *Id.*, ¶ 30.

Taking into account Mr. Vowels's testimony and that of Dr. Unverzagt, the Court of Appeals concluded that the post-conviction court had not erred when it found that Mr. Vowels was not ineffective when he did not further investigate Mr. Fairley's competency or seek a competency hearing. *Id.*

This Court is required to give the state court decision great deference. The legal standard set forth above bears repeating here. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting Richter, 562 U.S. at 103).

Under this standard, this Court cannot say that the Indiana Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The Court of Appeals considered numerous factors in the state court record and found no reason that would have compelled Mr. Vowels to have Mr. Fairley's competency evaluated. Mr. Fairley is not entitled to habeas corpus relief on this claim.

### C. Trial Court's Failure to Evaluate Competency and Hold a Hearing

#### 1. Mr. Fairley's Argument

Mr. Fairley argues that he was denied due process when the trial court failed to *sua sponte* order a competency evaluation and hold a hearing in light of the facts of the case. Dkt. 2, p. 8. Mr. Fairley does not specify what facts the trial court knew or should have known that required a competency evaluation.

#### 2. Respondent's Argument

The respondent maintains that this issue, a free-standing claim independent of Mr. Fairley's other claims, was decided by the Indiana Court of Appeals on state law grounds that were independent of the federal question and adequate to support the judgment. He argues that this

claim, in Indiana, is a fundamental error claim because Mr. Fairley contends the trial court should have acted *sua sponte*. Indiana does not permit fundamental error claims in post-conviction proceedings. Thus the claim was non-reviewable on state law grounds, and, as a result, not reviewable by this Court.

### 3. Analysis

The respondent is correct that a federal court will not review a federal question decided by a state court "on a state law ground that is independent of the federal question and is adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). This is true whether the state law ground is substantive or procedural. *Id.*, 562 U.S. at 315.

The Indiana Court of Appeals disposed of Mr. Fairley's claim thusly:

> Notably, Fairley does not bring this claim under the rubric of a claim of ineffective assistance of trial counsel, nor is it part of his claim that his plea was not knowingly or voluntarily made. Instead, it appears to be a free-standing claim of error. More specifically, it appears to be a claim of fundamental error, as he argues that the trial court should have acted *sua sponte*. *See Taylor v. State*, [86 N.E.3d 157, 162 (Ind. 2017)] (noting that to show fundamental error, a defendant must establish that the trial court should have raised an issue *sua sponte* due to a "blatant violation of basic and elementary principles, undeniable harm or potential for harm, and prejudice that makes a fair trial impossible."). But claims of fundamental error are not available in post-conviction proceedings. *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). Thus, to the extent that Fairley's claim is one of fundamental error, we are unable to review it. *See id*.

Dkt. 9-7, ¶ 42.

"In assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules. Instead, we ask whether the rule invoked was firmly established and regularly followed." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015) (citations and quotations marks omitted). In sum, "[i]f a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal

claim, then [a federal court is] unable to consider that claim on collateral review." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010). This Court knows of no case where a state post-conviction court and the Indiana Court of Appeals reviewed, on the merits, a fundamental error claim. The state procedural rule appears to be firmly established, *see Sanders, supra*, and as far as this Court knows, regularly followed.[2]

Mr. Fairley did not file a reply, thus there is no attempt to show cause and prejudice to excuse this procedural default, and no attempt to show that failing to consider the issue will result in a fundamental miscarriage of justice. On this record, the Court does not discern a basis to evaluate cause and prejudice.

Because Mr. Fairley's third claim for relief is unavailable for federal review, habeas corpus relief cannot be granted on this claim.

## V. Conclusion

Finding no ground warranting relief, the Court **denies** the petition for a writ of habeas corpus. Final judgment consistent with this Order shall now issue.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

---

[2] The Indiana Court of Appeals held that it was unable to review Mr. Fairley's claim, but then wrote that "[e]ven if we addressed Fairley's claim on its merits, he would not prevail." Dkt. 9-7, ¶ 43. The court noted that "The trial court thoroughly explained the rights Fairley would forgo by pleading guilty, and Fairley indicated that he understood his rights yet still desired to plead guilty. Vowels even questioned Fairley on the record to ensure that Fairley understood that he was forgoing the possibility of being convicted for a lesser included offense. Still, Fairley indicated that he understood this and wanted to plead guilty. Under these facts and circumstances, we are unable to say that Fairley was so obviously impaired that the trial court should have ordered a competency evaluation *sua sponte*. This Court finds this alternative analysis is not an unreasonable determination of the facts, and supports a conclusion that no federal constitutional violation occurred when the trial court judge did not *sua sponte* order a competency evaluation.

Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Mr. Fairley's guilty plea was knowingly, intelligently, and voluntarily made; he was competent to enter the plea; and his counsel was not ineffective. Jurists of reason would not disagree with this Court's resolution of his claims and nothing about the claims deserve encouragement to proceed further. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

Date: 5/10/2019

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Distribution:

Joshua J. Fairley
218947
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Electronically Registered Counsel